United States District Court
Southern District of Texas
**ENTERED**
November 08, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:17-112 |
| | § | CIVIL NO. 2:19-44 |
| SALVADOR BARAJAS, JR., | § | |
|   Defendant/Movant. | § | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Salvador Barajas, Jr., filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and memorandum in support (D.E. 32, 33), to which the United States of America (the "Government") responded (D.E. 39).[1]

## I. BACKGROUND

On February 1, 2017, Movant entered the inspection lane of the U.S. Border Patrol checkpoint near Falfurrias, Texas. After a trained drug detection dog alerted to Movant's vehicle, agents asked him for permission to search for drugs. Movant consented to the search of his truck and pulled into the secondary inspection area. The search uncovered 32 bundles of methamphetamine inside the gas tank of Movant's truck. Movant was arrested and charged with possession with intent to distribute more than 500 grams (approximately 31.6 kilograms) of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Movant appeared before the Court on April 17, 2017, and entered a plea of guilty without a written plea agreement. The Court accepted Movant's plea and ordered the Probation Office to prepare a Presentence Investigation Report (PSR, D.E. 12). The PSR assigned Movant a base offense level of 38 based on 30.43 kilograms of 97% pure methamphetamine. After a three-level

---

[1]. Docket entries refer to the criminal case.

adjustment for acceptance of responsibility, the resulting advisory guideline range for Level 35, Criminal History Category III, was 210–262 months. Defense counsel filed written objections to the PSR, arguing for a two-level reduction under U.S.S.G. § 3B1.2(b) and a four-level reduction under U.S.S.G. § 2D1.1(a)(5), based on Movant's minor role in the offense.

At sentencing, defense counsel argued for a minor role adjustment and for the mandatory minimum sentence of 120 months because Movant was a family man, he had tried to cooperate with the Government, and his criminal history showed that he had a substance abuse problem, not that he was a violent criminal. The Court found Movant did not qualify for a minor role adjustment but ultimately varied downward from the Guidelines and imposed a sentence of 180 months' imprisonment, to be followed by 5 years' supervised release.

Judgment was entered September 25, 2019. Movant appealed, claiming the factual basis for his plea was inadequate because it did not establish that he knew the type and quantity of the controlled substance involved in the offense. *United States v. Barajas*, 714 Fed. App'x 478, 479 (5th Cir. 2018). The Fifth Circuit affirmed this Court's judgment after Movant "correctly" conceded that the issue was foreclosed by *United States v. Betancourt*, 586 F.3d 303 (5th Cir. 2009). *Id.* Movant then filed a petition for a writ certiorari with the United States Supreme Court. His conviction became final on April 23, 2018, when the Supreme Court denied certiorari. *See Clay v. United States*, 537 U.S. 522, 527 (2003).

Movant filed the current motion under 28 U.S.C. § 2255 on January 30, 2019. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion raises a plethora of claims:

A. Trial counsel was constitutionally ineffective for failing to move to suppress evidence of the methamphetamine before Movant pled guilty.

B. Trial counsel was constitutionally ineffective in relation to Movant's guilty plea because she:

1. Failed to object to an error in the Sentence Data Sheet;

2. Failed to adequately explain the nature of the charge, that the crime required knowledge or intent, and how the weight of methamphetamine would impact Movant's sentence;

3. Led Movant to believe he would receive a sentence "in the neighborhood of 120-months;"

4. Instructed Movant to express understanding and agreement to the Court's questions when he did not understand or agree; and

5. Failed to adequately communicate with Movant.

C. Trial counsel was ineffective in relation to sentencing because she failed to:

1. Zealously advocate for a lower sentence;

2. Object to overstated and inaccurate criminal history;

3. Argue for application of safety valve, a minor role adjustment, and the statutory minimum sentence;

4. Urge the Court to consider Movant's "super extraordinary acceptance of responsibility;"

5. Call beneficial witnesses to mitigate Movant's sentence; and

6. Argue that Movant was "likely unaware" of the type of drug he was transporting.

D. The Court should consider application of the First Step Act.

E. Movant is entitled to a downward departure based on "sentencing disparity" between his sentence and other defendants.

## III. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the

statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

## IV. ANALYSIS

### A. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To show that his

attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera,* 412 F.3d 577, 581 (2005).

"Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). "A court need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

### 1. Failure to File Motion to Suppress

Movant first complains that counsel was ineffective for failing to file a motion to suppress evidence of the methamphetamine due to "the illegality of the stop at the Immigration Inspection Station checkpoint and subsequent search of Movant's person and property without probable cause or a search warrant, even after Movant's showing proof of citizenship." D.E. 33, p. 2.

The initial stop in this case, which occurred at a fixed immigration checkpoint, was legal. *See United States v. Tello*, 924 F.3d 782, 786 (5th Cir. 2019) (At a fixed checkpoint, "which has as its primary purpose identifying illegal immigrants, vehicles may be briefly detained in furtherance of that purpose, and the occupants questioned, without either a warrant or any individualized reasonable suspicion.") (citing *United States v. Jamie*, 473 F.3d 178, 181 (5th Cir. 2006)). The permissible duration of an immigration stop includes time for Border Patrol agents to conduct a canine sniff to search for drugs or concealed aliens, so long as the sniff does not lengthen the stop beyond the time necessary to verify the immigration status of a vehicle's passengers. *Tello*, 924 F.3d at 787 (citing *United States v. Ventura*, 447 F.3d 375, 378 (5th Cir. 2006)). Here, the drug detection dog alerted to Movant's vehicle while agents questioned him about his immigration

5

status and itinerary. Once the dog alerted, agents had probable cause to search for drugs without a warrant or consent. *See United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003) ("We have repeatedly affirmed that an alert by a drug-detecting dog provides probable cause to search."). However, Movant did consent to the search, and he has offered no argument or evidence that his consent was involuntary or otherwise invalid.

Because counsel has no obligation to file frivolous motions, she was not ineffective for failing to file a motion to suppress evidence of the methamphetamine. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995); *Clark v. Collins*, 19 F.3d 959, 965–66 (5th Cir. 1994). This claim is denied.

### 2. IAC in Relation to Movant's Guilty Plea

Movant complains that counsel was ineffective at rearraignment because she failed to object to an error in the Sentence Data Sheet,[2] which led him to believe that his sentence would be calculated using a lesser amount of methamphetamine. The record shows that, during the plea colloquy, the Court recognized a discrepancy between the Sentence Data Sheet prepared by the Assistant United States Attorney (AUSA) and the Indictment. Rearraign. Tr., D.E. 26 at 18:14-20. The AUSA responded that she was unsure why the Sentence Data Sheet stated that the amount of methamphetamine involved in the offense was 1.07 kilograms, when the correct amount, as alleged in the Indictment, was 31 kilograms. *Id.* at 18:21–19:9.[3] As part of the factual basis for his plea, Movant agreed that DEA laboratory testing confirmed that the bundles he transported contained a net weight of 30.43 kilograms of methamphetamine. *Id.* at 23:20–24:4. Counsel was not ineffective

---

2. A sentence data sheet is a document prepared by the Government to assist the Court at rearraignment by listing the charge(s) to which a defendant is pleading guilty and the minimum and maximum statutory sentence for each charge. It is not part of the official record.

3. The Pretrial Services Report, Indictment, and AUSA's Criminal Docket Sheet all list the amount of methamphetamine as 31 kilograms. *See* D.E. 5, 6, 7.

for failing to object to an error in the Sentence Data Sheet that was immediately recognized and corrected by the Court and in no way affected Movant's sentence. Moreover, Movant's claim that he believed he would be held responsible for only 1.07 kilograms of methamphetamine at sentencing lacks credibility and is belied by the record.

Movant next states that, "due to faulty communication with counsel, [he] was led to believe he would receive a sentence in the neighborhood of 120-months." D.E. 33, p. 10. Movant acknowledged at rearraignment that he could be sentenced anywhere from a *minimum* of 10 years (120 months) up to life in prison. Rearraign. Tr. at 13:11-23. He further stated he understood the advisory nature of the Sentencing Guidelines. *Id.* at 15:6–16:17. His conclusory allegation that counsel misled him into believing he would receive a 120-month sentence is unsupported by the record and without merit.

Movant next claims that counsel was ineffective for failing to adequately explain the nature of the charge, that his crime required knowledge or intent, and how the weight of methamphetamine would impact his sentence. Movant testified at rearraignment that he discussed the Indictment with counsel and understood the charges against him. Rearraign. Tr. at 9:7-16. He stated that he understood that the Government must prove that he "*knowingly* possessed a controlled substance . . . with the *intent* to distribute it." *Id.* at 18:9-14, 19:12-13 (emphasis added). He also testified that he understood his sentence would be determined by the quantity of methamphetamine for which he was held responsible and that he had discussed the Sentencing Guidelines with his counsel and how they would be applied in his case. *Id.* at 13:11-13, 15:6-9. He further stated that he understood the sentencing process and did not have any questions. *Id.* at 16:7-17. Movant's sworn testimony in open Court is entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*,

431 U.S. 63, 74 (1977) (statements made under oath in open court "carry a strong presumption of verity" and create a "formidable barrier" in subsequent proceedings)). Movant's counsel was not ineffective for failing to adequately explain something Movant swore under oath he understood.

Movant nonetheless complains his attorney "counsel[ed] [him] to express understanding of and agreement to questions of the Court directed to Movant which [he] neither understood nor knowingly agreed with." D.E. 32, p. 3. Movant does not specify what exactly he did not understand or agree with, nor has he offered any evidence in support of his claim that counsel instructed him to lie to the Court. Movant also confirmed that he understood he was giving testimony under oath and that if he were to "testify falsely it c[ould] be used against [him] in a separate prosecution for perjury or for making a false statement." Rearraign. Tr. at 5:5-12. There is no merit to this claim.

Finally, Movant complains that counsel failed to adequately communicate with him throughout representation and was unprofessional and impatient with him. His sworn statement in open court that he was "pleased" with counsel's representation belies this claim. Rearraign. Tr. at 9:17-19. *See Lampaziane*, 251 F.3d at 524.

### 3. IAC at Sentencing

Movant claims counsel was ineffective at sentencing for a number of reasons, including that counsel failed to: zealously advocate for a lower sentence, object to overstated and inaccurate criminal history,[4] argue for the statutory minimum sentence, urge the Court to consider Movant's assistance and acceptance of responsibility, and argue for a minor role adjustment. This claim is belied by the record, which shows that counsel did raise all of these arguments in advocating for

---

4. Movant maintains that the use of his prior misdemeanors "resulted in an artificially high criminal history score." D.E. 33, p. 8. Movant received two criminal history points for a 2012 DWI-Second Offender conviction for which he was sentenced to 60 days' imprisonment. He also received two points for a 2013 conviction for Failure to Stop and Give Information, for which he was sentenced to 100 days' imprisonment. Under U.S.S.G. § 4A1.1, two points are added for each prior sentence of imprisonment of at least 60 days. While there are some misdemeanor offenses that are not counted under the Guidelines, Movant's offenses did not qualify as excluded offenses under U.S.S.G. § 4A1.2(c).

the mandatory minimum sentence. 9/19/2017 Sent. Tr., D.E. 27 at 4:12–6:24, 7:16–17:9, 20:25–21:13, 22:8–23:10.

Movant next argues that counsel failed to argue for the application of safety valve. At the time Movant was sentenced, in order to be eligible for "safety valve," a defendant was required to satisfy the following criteria: (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury to another person; (4) the defendant was not an organizer, leader, manager, or supervisor and was not engaged in a continuing criminal enterprise; and (5) the defendant has truthfully provided to the Government all information the defendant has concerning the offense. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). Movant did not qualify for safety valve because he had three criminal history points, and counsel was not ineffective for failing to argue otherwise.

Movant further complains that counsel failed to argue that Movant was "likely unaware" of the type of drug he was transporting. As set forth in Part I, *supra*, Movant argued on appeal that the factual basis for his plea was inadequate because it did not establish that he knew the type and quantity of the controlled substance involved in the offense. *Barajas*, 714 Fed. App'x at 479. The Fifth Circuit affirmed this Court's judgment after Movant correctly conceded that the issue was foreclosed. *Id.* Because this claim was decided against him on appeal, it is procedurally barred. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."). Moreover, Movant's sworn statement in open court that that he knowingly transported 30.43 kilograms of methamphetamine is entitled to a strong presumption of truthfulness. *See Lampaziane*, 251 F.3d at 524.

Finally, Movant argues that counsel was ineffective at sentencing because she failed to call beneficial witnesses to mitigate his sentence. The Fifth Circuit "ha[s] explained that 'complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.'" *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) (quoting *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)). To prevail on such a claim, "'the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" *Id.* (quoting *Day v. Quartermain*, 566 F.3d 527, 538 (5th Cir. 2009)). Movant's conclusory statement that unnamed "family, friends, coworkers, employers or other witnesses . . . could and would have painted a fuller and more understandable picture for the Court of who I am; my past life and my prior total lack of involvement in drug activity" (D.E. 33, p. 5) is insufficient to meet this burden.

In sum, Movant has failed to show that counsel was ineffective at sentencing. This claim is denied.

### B.  First Step Act

Movant asks the Court to resentence him under the First Step Act, which increases to four the number of criminal history points defendants may receive and still be eligible for safety valve. 18 U.S.C. § 3553(f) (as amended); First Step Act of 2018, PL 115-015, _____, 2018, 132 Stat. 015, § 402(b). Section 402(b) of the Act explicitly states that the safety valve amendments "shall apply only to a conviction entered on or after the date of enactment of this Act." First Step Act § 402(b) (emphasis added). The First Step Act was signed into law on December 21, 2018. Because Movant was convicted in 2017, he cannot benefit from the changes to the safety valve provision. This claim is denied.

### C. Sentencing Disparity

Finally, Movant asks the Court "to consider a downward departure or variance based on sentencing disparity." D.E. 33, p. 12. "A motion under § 2255 is not the place to complain of a sentencing disparity." *Habib-Rodriguez v. United States*, 2008 WL 2225673, at *1 (S.D. Tex. 2008) (citing *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)). Moreover, because Movant could have raised this claim on direct appeal but did not, it is procedurally defaulted. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) ("[R]eview of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."); *see also United States v. Hampton*, 99 F.3d 1135, at *2 (5th Cir. 1996) (unpublished) (affirming dismissal of sentencing disparity claim as procedurally defaulted). This claim is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the

movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Movant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (D.E. 32) is **DENIED**, and Movant is **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 6th day of November, 2019.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE